[No. 15228.   Department Two.   August 9, 1919.]

*In the Matter of the Estate of* Josef Jiskra, *Insane.*
Minnie Ellis *et al., Appellants,* v. Frank Bert,
*as Guardian etc., Respondent.*[1]

Guardian and Ward—Investments—Liability. Where a guardian
for an insane person was ordered to invest moneys collected for the
current year in certificates of deposit of a certain bank, which was
a bank of good repute, and the·next year was ordered to invest
collections in certificates of deposit without specifying the bank,
he was justified in considering the order as a continuing one and
in investing the funds in the same bank, and is not liable for the
loss of the funds through failure of the bank.

Same (30)—Accounting—Compensation. Upon allowing the final
account of a guardian, an allowance of $25 attorney's fees and $25
as a fee for the guardian was proper, under Rem. Code, § 1652.

Appeal from a judgment of the superior court for
Pacific county, Reynolds, J., entered October 18, 1918,
in probate, setting aside the final account of a guar-
dian. Affirmed.

*Herman Murray,* for appellants.

*Fred M. Bond, John T. Welsh,* and *John I. O'Phelan,*
for respondent.

Mount, J.—This appeal is from a judgment of the
superior court settling the final account of the guar-
dian of the estate of Josef Jiskra.

[1]Reported in 182 Pac. 959.

It appears that Josef Jiskra at one time was a resident of Pacific county, in this state, and that he acquired title to certain real estate in that county. He was afterwards adjudged insane, and letters of guardianship were issued to Frank Bert on the estate of the insane person in Pacific county. Thereafter the real estate was sold for four thousand dollars and the proceeds thereof were reported in the annual account made by the guardian in the year 1910. The proceeds of the sale, after deducting the expenses and certain fees, were invested in a real estate mortgage. In the year 1911, the guardian made an annual report stating that he had on hand the sum of one hundred forty-nine dollars and eighty-nine cents ($149.89), the proceeds of the real estate mortgage. Upon the hearing of that report, the court made an order as follows:

"That there is on hand in said estate the sum of $149.89, and that the same should be invested so as to be revenue producing and that said sum of $149.89 should be invested by said guardian as follows, to wit:

"In a certificate of deposit in First International Bank of South Bend, to draw interest at a rate of not less than 4 per cent per annum."

This order was made on the 19th day of May, 1911. Thereupon the guardian invested the money in a certificate of that bank. In the following year, 1912, the guardian made a report that since his last report he had collected interest on the real estate mortgage in the sum of one hundred fifty-five dollars and seventy cents ($155.70), and on the certificate of deposit, five dollars and seventy-three cents ($5.73). Upon a hearing of that report, the court made an order as follows:

"It is hereby ordered that the balance remaining, to wit: the sum of $237.28, be invested in certificates of deposit drawing interest at a rate of not less than 4 per cent per annum."

This money was thereupon invested in certificates of deposit in the First International Bank of South Bend, where the guardian already had on deposit certain moneys belonging to the estate.

No report was thereafter made until the year 1917. In the meantime, the guardian had collected interest on the real estate mortgage and deposited the same in certificates in the same bank until he had on hand seven hundred thirty-five dollars ($735). The bank failed in the year 1915, and when the guardian made his final report in the year 1917 he asked for credit of seven hundred thirty-five dollars ($735) upon his account. Objections were filed to this final account, and upon a hearing before the court, the court found that the guardian should be charged with one thousand dollars and ninety-eight cents ($1,000.98), and that he should be allowed a credit of seven hundred thirty-five dollars ($735) against that sum on account of the failure of the First International Bank of South Bend. The heirs of the estate have appealed from that judgment.

Several assignments of error are alleged, but the principal question in the case, and the only one which we find necessary to discuss, is whether the court erred in allowing the credit of seven hundred thirty-five dollars ($735) on account of the funds lost by the failure of the First International Bank of South Bend. It will be observed that the court, upon the annual report of the guardian in the year 1911, ordered that the moneys collected by the guardian for the year 1910 should be invested by the guardian in a certificate of deposit "in First International Bank of South Bend, to draw interest at a rate of not less than 4 per cent per annum." In the year 1912, a similar order was made, but the name of the bank was not mentioned.

Thereafter no report of the guardian was made to the court, but the guardian continued to deposit the money of the estate in the same bank and in the same way. We think it is plain from this record that the guardian was authorized by the court by formal order to invest the proceeds of the estate in these certificates of deposit in this particular bank. The evidence shows that, at the time the deposits were made in this bank, the bank was recognized as being a solvent institution. No notice was brought home to the guardian that the bank was not solvent until about the time of its failure. The rule is stated in *In re Kohler's Estate,* 15 Wash. 613, 47 Pac. 30, 55 Am. St. 904, as follows:

"The uniform holding of courts has been that executors, administrators and guardians are bound by no greater or higher responsibility than that which is imposed upon any agent or trustee, and where such a one in good faith deposits money in a bank of good repute *to the trust account,* he ought not to be held liable for its loss in consequence of the failure of the bank."

A number of authorities are there cited to support the rule. The guardian in this case deposited the money received by him in the bank in good faith and to the trust account; and clearly, therefore, he was entitled to have credit for the amount of money so deposited. In addition to that rule, the guardian here had obtained an order of the court and the order was made an order of record to the effect that he should deposit the money received by him in this particular bank. This order was no doubt made upon sufficient evidence, and the court, after hearing the evidence, no doubt concluded that the bank was a safe one in which the money might be deposited, and therefore made the order. Aside from the general rule which we have

quoted above, we are of the opinion that the orders of the court above referred to were sufficient for the guardian to act upon, and that it was not necessary for him at each time he received money to obtain a special order of the court for depositing the money in that particular bank. We think he was justified in assuming that the order was a continuing one and that he would be authorized to make the deposit, especially in view of the fact that the bank at that time was regarded as in sound financial condition.

The court in making the order upon the final account allowed an attorney's fee of twenty-five dollars ($25) to counsel for the guardian, and also allowed the guardian twenty-five dollars ($25) fee upon the final account. Some objection is made to this part of the order, but we are satisfied that the court properly made these allowances. Rem. Code, § 1652.

We find no error in the record and the judgment is therefore affirmed.

HOLCOMB, C. J., FULLERTON, PARKER, and BRIDGES, JJ., concur.